GUNN *v.* BYROM, guardian.

A decree rendered on a petition filed for a general accounting between the plaintiff and defendant will not be reopened in order to allow the plaintiff to charge the defendant with additional items, unless it be shown that the plaintiff had no knowledge of the existence of such items before the rendition of the decree, and that such knowledge could not have been obtained by the exercise of ordinary diligence.

Argued February 14, — Decided March 21, 1899.

Equitable petition. Before Judge Felton. Bibb superior court. April term, 1898.

*Hill, Harris & Birch* and *Hardeman & Moore,* for plaintiff in error. *Guerry & Hall,* contra.

Совв, J. On July 9, 1897, John S. Byrom, as guardian of Julia Gunn, presented to the judge of the superior court of Bibb county a petition in which he alleged, in substance, that he had, at the April term, 1894, of Bibb superior court, filed an original petition against U. M. Gunn and Hattie A. Gunn, in which he alleged that he had been appointed guardian of Julia Gunn, a lunatic, as successor to Hattie A. Gunn, who had been removed, and that Hattie A. Gunn was the successor of U. M. Gunn, who had formerly been the guardian of Julia Gunn. Petitioner sought in that petition to recover and have an accounting and settlement with U. M. Gunn and Hattie A. Gunn on account of their trusts as former guardians of his ward, Julia Gunn. Petitioner further set forth in his original petition that the defendants had confederated together for the purpose of defrauding Julia Gunn; that by reason of this fraud Hattie A. Gunn had procured from the superior court of Bibb

county a decree conveying to her a large amount of real estate which was liable for the payment of whatever judgment might be procured by petitioner against her and U. M. Gunn on account of their trust as guardians.    It is further alleged in the petition that this case was referred to a master in chancery, who filed a report finding in favor of the plaintiff and subjecting the property in the hands of Hattie A. Gunn to the payment of the amount found in favor of plaintiff; that on exceptions to the master's report the court sustained the findings of the master as to certain of the property, and overruled certain others, all of which appears by the final decree of the court in the case; that upon a writ of error the Supreme Court overruled so much of the decree as excepted from the lien of the decree any property found by the master subject to the payment of the amount found in favor of plaintiff, which judgment has been made the judgment of the superior court.    Petitioner further alleges that at the time of filing the original bill, and at the time of. the hearing before the master, and at the time of the final decree, he did not know of any amounts due by either of the defendants as guardian for his ward, except those shown by the returns of U. M. Gunn, but that since the final decree he has learned that U. M. Gunn received from the sale of certain land in Jones county, in which Julia Gunn had a one-third interest, the sum of $6,000; that this money was received from one J. W. Smith on the 1st day of November, 1881; that U. M. Gunn, instead of charging himself with the full amount received on account of Julia Gunn, only charged himself with the sum of $671.66, the balance of the amount due Julia Gunn having been by U. M. Gunn mingled with other funds of himself and his wife, Hattie A. Gunn, and converted to his own use.    The prayers of the petition were, that petitioner be allowed to file his petition as supplemental to the original petition filed in the case; that the original petition, master's report, and original decree as amended by the judgment of the Supreme Court, be made a part of the supplemental petition, and that petitioner have judgment against U. M. Gunn for the sum of $1,330, with interest, which he prays may be declared to be a lien upon all of the property in the hands of Hattie A.

Gunn involved in the original case, and for an accounting against U. M. Gunn. Upon this petition the court passed the following order: " Ordered by the court that the plaintiff have leave to file the above petition as supplemental to the said original petition, and that process be attached to said supplemental petition, and that defendants be served with copies of said petition and process." On May 6, 1898, an amendment to the petition was allowed and filed, which alleged, in substance: The money received by Gunn from Smith was received by him as guardian and mingled with his own funds, and was invested as set forth in the original decree. The amount now sued for was not included in the original petition, by reason of the fraud perpetrated upon petitioner's ward by U. M. Gunn and Hattie A. Gunn by concealing from both petitioner and his ward that the money had been collected. Petitioner alleges that he had no means whatever of ascertaining the condition of the estate, except from the returns made by U. M. Gunn and H. A. Gunn to the court of ordinary; that at the time petitioner was appointed guardian his ward was a hopeless lunatic; and that by the most diligent effort to discover the true condition of the estate he was unable to do so because defendant concealed the facts from him; and that by mere chance one of his attorneys discovered after the final decree that Gunn had sold the land to Smith for six thousand dollars, instead of two thousand dollars as appears from the return.

The original petition filed against U. M. Gunn and Hattie A. Gunn, which is referred to in the petition in the present case, prayed for an injunction and the appointment of a receiver; that petitioner might have a decree vesting the title to certain property alleged to have been converted by defendants to their own use; that he might have judgment against defendants for "whatever sum may be found to be due the said Julia upon a final accounting with them in their capacity as her trustees," and, if title to the property converted by defendants could be vested in Julia Gunn, that petitioner might have a special lien upon such property as the property of defendants for the amount for which judgment would be rendered; that he have a decree against Hattie A. Gunn for the amount

of the trust fund of his ward which she acknowledges to have received from U. M. Gunn, and for the rents, issues and profits which she admits have come into her hands since her appointment as guardian, with interest thereon.

From the returns of U. M. Gunn to the ordinary, which are contained in the record of the original case and are referred to in both the original and amended petition, there appears a credit to the estate of Julia Gunn of $671.66 as the amount received from "J. W. Smith on Woolfork case." Attached to the returns were receipts given to U. M. Gunn as guardian of Julia Gunn, by various attorneys at law, for services in the Woolfork case referred to, and for the collection of the fi. fa. issued in that case, one of them reciting that it was for services in "representing him in the sale of the Jones county Woolfork lands." From an extract of the testimony of U. M. Gunn, which also appears in the record of the original case, it appears that the matter now in controversy was under investigation in that case.

To the supplemental petition Hattie A. Gunn filed a demurrer as follows: (1) There is no equity in said petition. (2) There is no cause of action set forth in said supplemental petition, and there is no law which authorizes the filing of the same. (3) It appears from the face of the petition that the subject-matter of said suit has been adjudicated and determined between the same parties by the final judgment and decree of this court. (4) It appears upon the face of the supplemental petition that the original petition, which the petition in this case seeks to supplement, was finally disposed of by a final decree of this court before said supplemental petition was filed. The court overruled the demurrer, and Hattie A. Gunn excepted.

It is not necessary, under the view we take of the present case, to determine whether under any circumstances a petition in the nature of a supplemental bill will be allowed to be filed in order to reopen a decree rendered on a petition filed for the purpose of an accounting between the parties, limited in its scope to certain items set up in the petition. The original petition filed against U. M. Gunn and Hattie A. Gunn, as is clearly seen by reference to the prayer of the same above set

out, was not only for an accounting as to designated items, but
it contemplated a general accounting between the parties as to
all matters of liability to the plaintiff growing out of the rela-
tion of the defendants as guardians of the plaintiff's ward.
Neither is it necessary to determine whether a petition in the
nature of a supplemental bill will lie to reopen a decree ren-
dered on a petition filed for a general accounting, where items
in a fund considered in the accounting have been left out by
accident, mistake, or the fraud of the parties sought to be
charged.    The facts as they appear in what is called the sup-
plemental petition in this case, and as they appear in the record
of the original suit in the same court, which by appropriate al-
legations is made a part of the supplemental petition, and there-
fore as against the pleader making such allegations will be con-
sidered as embodied therein, do not bring the case within the
rules above referred to.    It is therefore unnecessary for us to
classify the petition in this case or to attempt to name it.    Under
the law in this State we look at the substance and not the form;
and when this is done it is apparent that the plaintiff, upon the
facts alleged, is not entitled to any relief under a petition of any
name, or a pleading of any form.    The decree on the original
petition is conclusive upon the defendants on the question of
their liability to the plaintiff as to all matters dealt with in the
decree, and it is equally conclusive on the plaintiff that he has
no other claim against the defendants growing out of the sub-
ject-matter of the litigation.    This solemn judgment of a court
of competent jurisdiction can not be reopened by one of the par-
ties even for fraud, accident, or mistake, unless it be shown that
the facts now relied on to charge the defendants with additional
liability were not only not known to the plaintiff before the ren-
dition of the decree, but that the same could not have been dis-
covered by the exercise of ordinary diligence.    It may be that
the allegations of want of knowledge in the petition in this case
are sufficient.    But are the allegations as to the exercise of dili-
gence sufficient to authorize a reopening of the decree?    Byrom,
the guardian, the plaintiff in the original petition, as shown by
its very averments, was, as he believed, dealing with persons
who not only had used but were still using every effort to de-

fraud his ward. He was on notice, therefore, that they must be watched at every point. Under such circumstances would it be diligence on his part to rest satisfied with mere statements made by these parties in regard to the administration of the estate in their hands? The returns made by U. M. Gunn as guardian were nothing more than his declarations. It is true they were under oath, but Byrom was proceeding against him, as his petition clearly indicates, as a person who would not hesitate even at perjury to complete the fraud which it was alleged he was attempting to perpetrate. Such being the case, it does not lie in the mouth of the plaintiff to say that he was misled by the returns of this alleged faithless and unscrupulous guardian. In addition to this, the fund which was alleged to have been concealed arose from the sale of land in an adjoining county to that in which the suit was brought. The name of the alleged purchaser appears on the face of the return. Vouchers for fees and legal services rendered to the guardian by various attorneys in connection with the matter referred to in this item were attached to the return. It does seem that a person dealing with another whose character was such as that of U. M. Gunn was alleged to be should not have passed by these sources of information in regard to the good faith of Gunn in reference to this transaction. This view of the case is strengthened when we consider that this very item was directly under investigation in the former proceeding. We do not think that the pleadings make such a case as would authorize the reopening of the decree, and it was therefore error to overrule the demurrer filed by the defendant Hattie A. Gunn.

*Judgment reversed. All the Justices concurring.*